IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SERVICEMASTER OF SALINA, INC., et al., | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 11-1168-KHV-GLR |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The Court has the following motions under consideration: Defendant United States' Opposed Emergency Motion for Order Barring Plaintiffs' Interference with Subpoenaed Documents (ECF No. 23) and Assurity's Motion to Quash or Modify United States' Subpoena Duces Tecum to William Burns (ECF No. 27). On April 16, 2012, the Court conducted a status conference. Bradley Schlozman of the Hinkle Law Firm LLC and Charles M. Ruchelman, Christopher S. Rizek, James S. MacBeth, and Matthew C. Hicks of Caplin & Drysdale Chartered (CD) appeared on behalf of Plaintiffs. Ellen K. Weis and Harris J. Phillips of the United States Department of Justice appeared on behalf of Defendant. Kersten L. Holzhueter of Spencer Fane Britt & Browne LLP and the attorneys from CD appeared on behalf of third-party movant, Assurity Life Insurance Company (Assurity). As orally stated at the status conference and as set out more fully below, the Court overrules the motion to quash in its entirety and overrules the emergency motion as moot in part and sustains it to the very limited extent set forth herein.

**I.   NATURE OF THE MATTER BEFORE THE COURT**

This case concerns the tax liability of three participants (Plaintiffs) in an SFL EPIC Welfare Benefit Plan (the Plan) administered by Assurity, a non-party to this case. Defendant issued a subpoena directing non-party Burns (an insurance agent who has clients who participated in the

Plan) to produce responsive documents by January 20, 2012, and provided notice to counsel for Plaintiffs of the subpoena. After Burns informed defense counsel that he had received the subpoena and had mailed a waiver of service, Defendant extended the deadline to produce documents to February 3, 2012, and Burns agreed to allow a vendor hired by Defendant to copy responsive documents. Counsel from CD wanted to conduct a privilege review of documents before production, but Defendant would not agree to that.

On January 25, 2012, Defense counsel called Burns to coordinate copying, but he had already allowed CD to take his documents for copying. Defendant filed its emergency motion the next day. On January 31, 2012, Burns told defense counsel that he was withholding some documents as privileged on the request of CD. Two days later he informed defense counsel that he had just received copies of documents and that he would mail a computer disc the next day. Assurity filed its motion to quash on February 3, 2012. The motions are fully briefed.

## II.    EMERGENCY MOTION

Defendant seeks an order requiring CD to return all documents it removed from Burns, to destroy copies that it has made and certify that it has done so, and to bar the law firm from any further interference with subpoenaed witnesses.[1] Because the documents have already been returned to Burns,[2] the motion is overruled as moot in part. CD's conduct, furthermore, does not justify destroying any copies. But CD did interfere with Burns' timely response to the subpoena. The Court thus sustains the motion to the limited extent that it admonishes counsel against interfering with the duty of a respondent to timely comply with a lawfully issued subpoena. The Federal Rules

---

[1] Emergency Mot. at 7.

[2] *See* ECF No. 24.

of Civil Procedure provides appropriate mechanisms for protecting privileged or protected documents that are responsive to a subpoena, i.e., written objection under Fed. R. Civ. P. 45(c)(2)(B) by the person commanded to produce documents, timely motion to quash under Rule 45(c)(3), and motion for protective order under Rule 26(c). Rule 45(d)(2)(B) also provides a means to retrieve, sequester, or destroy produced information that is privileged or protected as work product. CD is directed to review these rules, particularly, Rule 45(d)(2)(B). The emergency motion is otherwise overruled as moot.

### III. MOTION TO QUASH

Non-party Assurity seeks to quash or modify the subpoena issued to Burns with respect to eighteen documents that it contends are protected by the attorney-client privilege and the work product doctrine. It asserts that the transmission of those documents did not waive those protections because of a common interest it has with the Plan participants and the insurance agents, including Burns. The Court overrules this motion for the following reasons:[3]

#### A. Inadequate Privilege Log

First, the privilege log of Assurity provides inadequate information to determine whether every element of the attorney-client privilege or work product is satisfied.[4] Assurity dances around the required elements by using ambiguous and vague references about legal advice. The inadequate

---

[3]In addition to arguing that the motion lacks merit, Defendant asserts that the motion is untimely and was filed without complying with the conference requirements of D. Kan. Rule 37.2. At this juncture, the substantive issues addressed in the motion to quash warrant addressing the merits without becoming embroiled in the briefed procedural disputes. To expedite its ruling on the merits, the Court thus waives the objection as to whether the motion complies with the procedural requirements identified by Defendant.

[4]*See Cont'l Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 WL 3245428, at *1 (D. Kan. Nov. 2, 2007) (identifying nine required categories of information to be included in a privilege log).

privilege log, however, is a subordinate reason for overruling the motion in its entirety.[5]

### B. Documents Not Protected as Work Product

Second, the Court does not find that the work product doctrine protects the eighteen identified documents. As set out in Fed. R. Civ. P. 26(b)(3), that doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." This doctrine has two distinct components – one which requires that the document or thing in question be created because of the anticipation of litigation and one that places reasonable limits on a party's anticipation of litigation.[6] Whether a document constitutes work product depends on the primary reason for its creation.[7] In fact, there is generally no work product protection "unless the primary motivating purpose for creating the document is to assist in pending or impending litigation."[8] Parties claiming work product protection must show an "underlying nexus between the preparation of the document and the specific litigation."[9]

But even when litigation is anticipated, there is no work product protection accorded to documents prepared "in the ordinary course of business or for other non-litigation purposes."[10] Such

---

[5] Assurity appears to concede the inadequacy of its log, but argues that the information in its log, combined with its description of the documents in its memorandum supporting its motion, sufficiently shows the documents are privileged or protected. The Court disagrees.

[6] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).

[7] *Marten v. Yellow Freight Sys., Inc.*, No. 96-CV-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

[8] *Id.* at *11.

[9] *Id.* (citation omitted); *accord Pouncil v. Branch Law Firm*, No. 10-1314-JTM, 2011 WL 5025033, at *2 (D. Kan. Oct. 21, 2011).

[10] *Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D. Kan. 1996).

4

protection does not arise merely on an "inchoate possibility, or even likely chance of litigation."[11] The doctrine only justifies protection when the threat of litigation is real and imminent.[12] This means that "there must be a substantial probability that litigation will ensue at the time the documents were drafted."[13] Whether documents are prepared in anticipation of litigation ultimately requires "a case-by-case analysis, considering the unique factual context of the given problem."[14]

Assurity contends that the eighteen withheld documents were created after the Internal Revenue Service (IRS) first initiated audits of plan participants in the late 1990s and all but four of the eighteen documents were created after the IRS initiated an examination into Plaintiffs' specific tax liabilities.[15] But neither the audit nor IRS investigation processes make litigation imminent. The IRS, furthermore, sent Plaintiffs correspondence in October 2009 explaining that tax liability adjustments may be necessary and informing Plaintiffs of their tax payer rights. The withheld documents were created no later than May 2009. Because the withheld documents were not created in reasonable anticipation of litigation, they are not protected as work product.

### C. Attorney-Client Privilege and the Common-Interest Doctrine

Third, to the extent the eighteen documents would be privileged as attorney-client communications, their disclosure to others outside that relationship waived whatever attorney-client privilege

---

[11]*See id.*

[12]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *9 (D. Kan. Oct. 5, 1995).

[13]*U.S. Fire Ins. Co.*, 247 F.R.D. at 657.

[14]*Id.* at 659 (citation omitted).

[15]The eighteen withheld documents in this case were created between March 3, 2004, and May 6, 2009.

that may have existed.[16] Assurity contends that there has been no waiver, however, because the documents were only disclosed among those who have an identical legal interest, i.e., the Plan administrator, the Plan participants, and insurance agents who have clients participating in the Plan. It provides three rationales for finding an identical legal interest: (1) it, Plan participants, and the insurance agents share an identical interest in defending treatment of the Plan under the tax Code; (2) Assurity and the insurance agents face potential legal claims by disappointed clients and they have a common "interest in avoiding suit"; and (3) common interest in determining whether Plan is the "same or substantially similar" to a transaction listed in IRS Notice 95-34.

Because the common interest doctrine (sometimes referred to as joint defense doctrine) is an exception to waiver, rather than a stand-alone privilege, there must be an applicable underlying privilege before the doctrine comes into consideration.[17] Even assuming that the eighteen documents are privileged, however, the common interest doctrine only acts as an exception to general principles of waiver when the parties share an identical common interest "in securing legal advice" and when the communications are "made to advance their shared interest in securing legal advice on that common matter."[18] The doctrine does not apply when the parties merely have similar legal interests

---

[16]As discussed earlier, the privilege log provides insufficient information to show that all elements of the attorney-client privilege are satisfied. Not only does each entry show disclosure to someone outside the attorney-client relationship, but other necessary components of the privilege appear absent, i.e., showing an attorney-client relationship and communicating legal advice. Given the waiver, the Court need not decide whether the other necessary elements of privilege exist.

[17]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192 JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006); *Sawyer v. Sw. Airlines*, Nos. 01-2385-KHV, 01-2386-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002).

[18]*U.S. Fire Ins. Co.*, 2006 WL 3715927, at *1 (citations omitted).

or when the interests are solely commercial or business in nature.[19]  Because the party asserting privilege has "the burden to establish that waiver has not occurred,"[20] that party also has the burden to show the applicability of the common interest doctrine.

Applying the foregoing principles, the Court finds that the Plaintiffs in this case do not share a common interest of law with Assurity and the insurance agents.  Assurity describes the supposed common interest as follows:  "Assurity, Plan participants, and the insurance agents for the Plan all shared an identical legal interest in defending the treatment of the Plan under the Code.  <u>If Plaintiff's tax treatment of the Plan is correct, then Plaintiffs would be entitled to a refund for amounts paid, and other participants in the Plan would face significantly lower tax liabilities.</u>"[21]  Thus Assurity accurately pinpoints the interest of the law for Plaintiffs as the tax deductibility of their payments under its Plan.  But neither Assurity nor Burns share that tax deductibility as a legal interest in common with Plaintiffs.  Only the Plaintiffs and similar consumers of the Plan, not its producer and salesmen, confront the issue of deducting their payments from their income tax returns.  Assurity and Burns may share similar interests of law, such as their own derivative liabilities either to Plaintiffs or to the United States, in the event their Plan turns out to be flawed.  They do share common interests with Plaintiffs, but they are business or commercial interests and legal interests similar to, but not the same as, the interest of Plaintiffs for a valid deduction against their income taxes.

Assurity thus has failed to carry its burden to show a common legal interest among it, the Plan participants, and the insurance agents.  Identical legal interests do not diverge.  Even if the three

---

[19]*Id.*

[20]*Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000).

[21]ECF No. 28 at 4 (emphasis added).

groups share a common interest in defending treatment of the Plan or in determining the Plan's similarity to transactions listed in an IRS Notice, Assurity has not shown that they shared an identical interest in securing legal advice for those matters. Differences between the parties in the legal interest make the interests non-identical, and thus make the common interest exception inapplicable.[22] Although Assurity states that it and various insurance agents have been sued under "prior iterations of the Plan," they identify no case where a court has applied the common interest doctrine in cases like the one now before this Court.

## IV.   CONCLUSION

For the reasons stated, the Court sustains in part and overrules in part as moot Defendant United States' Opposed Emergency Motion for Order Barring Plaintiffs' Interference with Subpoenaed Documents (ECF No. 23). The motion is sustained only to the limited extent stated herein. The Court also overrules in its entirety Assurity's Motion to Quash or Modify United States' Subpoena Duces Tecum to William Burns (ECF No. 27).

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 17th day of April, 2012.

S/Gerald L. Rushfelt  
Gerald L. Rushfelt  
U.S. Magistrate Judge

---

[22] *See Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (recognizing that the parties may have had a shared interest in some respect but their different interests precluded applicability of the doctrine).